IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL J. METTS and WENDY D. METTS, h/w, | : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| vs. | : | NO. 10-7233 |
| FLM DEVELOPMENT CO., INC., JAY-SCOT BUILDERS, INC. and FRANK J. PROVANZO, Defendants. | : : : : : | |

Henry S. Perkin, M.J.                                                                                             March 30, 2012

**<u>MEMORANDUM</u>**

Presently before the Court are two Motions to Dismiss Plaintiffs' Second Amended Complaint, which contains the following claims against all Defendants: Negligence (Count I), Negligent Misrepresentation (Count II), Intentional Misrepresentation (Count III), Breach of Contract (Count IV) and Breach of Implied Warranty of Habitability (Count V). In the first filed Motion, Defendants FLM Development Co., Inc. ("FLM") and Jay-Scot Builders, Inc. ("Jay-Scot Builders") move for dismissal of all claims against them on various theories. In the second Motion to Dismiss, Defendant Frank Provanzo ("Mr. Provanzo") moves for dismissal of all claims against him on the basis that Plaintiffs have not pled facts sufficient to establish his personal liability or sufficient to support piercing the corporate veil of Jay-Scot Builders and FLM. For the following reasons, the Motions to Dismiss will be granted in part and denied in part.

I.  **BACKGROUND**.

This action arises out of a Standard Agreement for the Sale of Real Estate ("Agreement of Sale") entered into on June 12, 2008, by Plaintiffs Michael and Wendy Metts ("the Metts" or "the Plaintiffs") as Buyers and Jay-Scot Builders as Seller for the purchase of real property located at 635 Melissa Lane, Lot 34, Mt. Joy, East Donegal Township, Pennsylvania ("Lot 34") within a planned community development known as "The Reserve at Union School." Defendant Frank J. Provanzo ("Mr. Provanzo") signed the Agreement of Sale on behalf of the Seller, Jay-Scot Builders. On June 30, 2008, settlement was reached on the sale of Lot 34 and the dwelling built on Lot 34. The June 30, 2008 "Settlement Statement" lists FLM and Jay-Scot Builders as the Sellers despite the June 12, 2008 Agreement of Sale listing only Jay-Scot Builders as the Seller.

The Agreement of Sale contains a mediation provision at Paragraph 32 which provides the following:

> (A) Unless otherwise checked in paragraph 32(D), Buyer and Seller will submit all disputes or claims that arise from this Agreement to medication in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute Resolution System. **Any agreement reached through mediation and signed by the parties will be binding** (see Information Regarding Mediation).
>
> (B) Buyer and Seller have received, read and understand the Rules and Procedures of the Home Sellers/Home Buyers Dispute Resolution System.
>
> (C) Any agreement to mediate disputes or claims arising from this Agreement will survive settlement.
>
> (D) ☐ MEDIATION IS WAIVED. Buyer and Seller understand that they may choose to mediate at a later date should a dispute or claim arise, but that there will be no obligation for any party to do so.

Compl., Ex. A., ¶ 32 (emphasis added). Attached to the Agreement of Sale is a separate page

entitled "Information Regarding Mediation (Paragraph 32: Mediation) Dispute Resolution System Rules and Procedures." Some pertinent provisions of the Dispute Resolution System Rules and Procedures follow:

> 1. Agreement of the Parties. The Rules and Procedures of the Dispute Resolution System (DRS) apply when the parties have agreed in writing to mediate under DRS. The written agreement can be achieved by a standard clause in an agreement of sale, an addendum to an agreement of sale, or through a separate written agreement.
>
> 4. Mediation Fees. Mediation fees will be divided equally among the parties and will be paid *before* the mediation conference. The parties will follow the payment terms contained in the mediator's fee schedule.
>
> 6. Conduct of Mediation Conference. **The parties attending the mediation conference will be expected to:**
>   a. **Have the authority to enter into and sign a binding settlement to the dispute**.
>   b. Produce all information required for the mediator to understand the issues of the dispute. The information may include relevant written materials, descriptions of witnesses and the content of their testimony. The mediator can require the parties to deliver written materials and information before the date of the mediation conference.

Compl., Ex. A, p. 17 (emphasis added). Plaintiff did not attach the Warranty Agreement to the Second Amended Complaint but Defendants FLM and Jay-Scot Builders attached to an Affidavit of Mr. Provanzo submitted in support of the Motion to Dismiss a "One-Year Limited Warranty Agreement" which was executed by the Plaintiffs and Mr. Provanzo on behalf of Jay-Scot Builders on June 30, 2008, the date of settlement. See Provanzo Affid., Ex. B. This Limited Warranty Agreement provides the following:

> 5. In addition to any provisions set forth herein, the following items are not covered by this Warranty:
>
>   D. Loss or damage caused by acts of God, including but not

3

limited to fire, explosion, smoke, water escape, changes in the level of underground water table,. Glass breakage, windstorm, hail, lightening [sic], falling trees, aircraft, vehicles, flood and earthquakes, etc.

O.  Settling of the Home (unless such settling shall cause structural damage), earth in and around foundation, utility trenches, basement door and window entry systems, or any other excavated and filled area on the Premises.

7. Owner agrees that Builder shall not be responsible or liable for any damage to mechanical equipment, personal property of [sic] any other materials stored in the basement or elsewhere in the Home resulting from any other foregoing conditions, it being understood that the maximum liability of Builder under this warranty shall be the replacement or repair of the defective portion of the Home.

8. **The Owner shall promptly contact Builder regarding any disputes involving this Agreement.  If discussions between the parties do not resolve such dispute, then the parties agree to submit such dispute to binding arbitration under the Pennsylvania Uniform Arbitration Act, 42 Pa. C.S.A. § 7301, et seq.  The arbitration shall be heard and decided by a panel of three arbitrators, one to be appointed by each party, and the third to be appointed by agreement of the arbitrators appointed by the parties.  If the arbitrators appointed by the parties cannot agree on the third arbitrator, then the third arbitrator shall be appointed as provided for by the Pennsylvania Uniform Arbitration Act.  The arbitrators, once appointed shall establish a schedule for the arbitration that will result in the issuance of a final decision by the arbitrators not later than six months after the date of the appointment of the third arbitrator.  The arbitrators' award shall be final and binding.  The arbitration shall take place in Lancaster, Pennsylvania, unless the parties otherwise agree.**

10.   CONSEQUENTIAL OR INCIDENTAL DAMAGES EXCLUDED.  CONSEQUENTIAL OR INCIDENTAL DAMAGES ARE NOT COVERED BY THIS WARRANTY.

11. Builder and Owner agree that this warranty on the Home is in lieu of all WARRANTIES OF HABITABILITY OR WORKMANLIKE CONSTRUCTION or any other warranties, express or implied.

Provanzo Affid., Ex. B (emphasis added).[1]

In December of 2008, approximately six (6) months following the June 30, 2008 sale of the property, a sinkhole appeared on the right rear corner of Lot 34. Shortly thereafter, numerous other sinkholes appeared on Lot 34. Plaintiffs reported the sinkholes to Defendants, and Plaintiffs aver that Mr. Provanzo at these times represented himself as the developer and builder. Plaintiffs believe that prior to the execution of the June 12, 2008 Agreement of Sale, a sinkhole had been repaired on Lot 34 and that all Defendants were aware of the presence of the repaired sinkhole and the propensity for Lot 34 to develop additional sinkholes. In addition, a number of sinkholes appeared on Lot 34 after the one-year deadline of the alleged limited warranty.

After Plaintiffs notified Mr. Provanzo of the presence of sinkholes on Lot 34, Plaintiffs contend that they were consistently told by Mr. Provanzo and an individual named "Chuck" that sinkholes were "Acts of God" and not subject to the provisions of the one-year limited warranty. Plaintiffs contend that the sinkholes and the damages caused by the sinkholes were not items contemplated within the scope of the Limited Warranty or any Mediation Agreement. Plaintiffs further contend that the presence of the sinkholes has rendered Lot 34 uninhabitable, unmarketable and uninsurable.

At all times relevant to Plaintiffs' Second Amended Complaint, Plaintiffs contend that Mr. Provanzo was president of FLM, Jay-Scot Builders and Heartland Builders, Inc.

---

[1] Because Plaintiffs' claims are based, in part, on representations in this document and its attachments, this Court will consider the Affidavit of Mr. Provanzo and the attachments thereto in deciding the Motions to Dismiss. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

("Heartland Builders"),[2] and FLM was the developer of "The Reserve at Union School." On December 9, 2009, the Pennsylvania Department of State–Corporation Bureau recorded three "Statements of Change of Registered Office" filed by FLM, Jay-Scot Builders and Heartland Builders. Mr. Provanzo is listed with the Department of State as president of all three entities. As of 2010, Jay-Scot Builders is no longer in business. See Provanzo Affid., p. 2.

## II.     PROCEDURAL HISTORY.

Plaintiffs filed a complaint on December 14, 2010 and this case was assigned to the docket of the Honorable Lawrence F. Stengel. Defendants filed a motion to dismiss the complaint on February 14, 2011, which was followed by Plaintiffs' Amended Complaint filed on March 7, 2011. Defendants filed a motion to dismiss the Amended Complaint on March 14, 2011 and Plaintiffs filed their Second Amended Complaint on April 11, 2011. On April 18, 2011, Judge Stengel granted Plaintiffs leave to file their Second Amended Complaint on or before April 26, 2011. On April 25, 2011, Judge Stengel signed the consent and order referring this case to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. section 636(c) and Federal Rule of Civil Procedure 73.

On May 2, 2011, FLM Development and Jay-Scot Builders filed a motion to dismiss Plaintiffs' Second Amended Complaint and Plaintiffs' Response was filed on May 19, 2011. A second amended summons was issued as to Mr. Provanzo on June 30, 2011, and he filed a motion to dismiss the Second Amended Complaint on August 1, 2011. The Plaintiffs' response to Mr. Provanzo's motion to dismiss the Second Amended Complaint was filed on August 19, 2011.

---

[2]     Heartland Builders currently builds and sells homes at "The Reserve at Union School."

**III.    STANDARD OF REVIEW.**

A motion to dismiss under Rule 12 (b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The motion to dismiss standard has been the subject of recent examination, culminating with the United States Supreme Court opinion Ashcroft v. Iqbal, 129 S.Ct. 1927 (2009). Following Iqbal, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice" to defeat a Rule 12 (b)(6) motion to dismiss. Id. at 1949; see also Bell Atl. v. Twombly, 550 U.S. 544 (2007). The Third Circuit Court of Appeals applied the principles of Iqbal in Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), and articulated a two-part analysis that district courts in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12 (b)(6) motion to dismiss.

First, the factual and legal elements of a claim should be separated, meaning "a District Court must accept all of the complaint's well-pleaded facts as true, but may disregard legal conclusions." Id. at 210-11. Second, the Court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211. A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Id. (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'shown' that the pleader is entitled to relief." Iqbal, 129 S.Ct. at 1950; Jones v. ABN Amro Mortg. Grp., Inc., 606 F.3d 119, 123 (3d Cir. 2010). The Supreme Court explained that deciding whether a "complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to

draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

When faced with a motion to dismiss for failure to state a claim, courts may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. Lum v. Bank of Am., 361 F.3d 217, 222 n. 3 (3d Cir. 2004). A district court may also consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

**IV.   DISCUSSION.**

In response to the Motions to Dismiss, Plaintiffs contend that this Court should pierce the corporate veil of FLM and Jay-Scot Builders because there are questions whether Jay-Scot Builders or Mr. Provanzo was the real party in interest that entered into the Agreement of Sale for Plaintiffs' purchase of the subject real estate. Plaintiffs contend that the question of the real party in interest leads to questions whether Plaintiffs are contractually obligated to mediate and/or arbitrate the issues raised in the Second Amended Complaint. Finally, Plaintiffs contend that if this Court finds that FLM and Jay-Scot Builders are sham corporations, equity would be served by allowing Plaintiffs to pursue the various causes of action alleged in the Second Amended Complaint and not have their rights restricted by the alleged contractual obligations of the Agreement of Sale. Plaintiffs broadly contend that they "have pled sufficient facts to allow

[them] to pierce the corporate veil to ascertain who truly were the real parties in interest on the defense side of this matter." Pls.' Br. & Reply, p. 4.

    **A.    Motion to Dismiss Filed By Defendant Frank Provanzo.**

Defendant Frank Provanzo moves for dismissal of the claims in Plaintiffs' Second Amended Complaint, generally stating that Plaintiffs have not pled facts sufficient to establish a personal liability claim against him or sufficient facts to "pierce the corporate veil" of the Defendant corporations of which he is President. Because this case is before the Court on diversity of citizenship of the parties, we must look to Pennsylvania law regarding piercing the corporate veil.

The Pennsylvania Superior Court has stated that "there appears to be no clear test or well-settled rule in Pennsylvania as to exactly when the corporate veil can be pierced and when it may not be pierced." Fletcher-Harlee Corp. v. Szymanski, 936 A.2d 87 (Pa. Super. 2007). Mr. Provanzo notes that there is a strong presumption in Pennsylvania against piercing the corporate veil as the general rule is that a corporation shall be regarded as an independent entity, even if its stock is owned entirely by one person. Lumax Indus. v. Aultman, 669 A.2d 893 (Pa. 1995). A set of factors to be considered in disregarding the corporate forum could be undercapitalization, failure to adhere to corporate formalities, substantial intermingling of personal and corporate affairs and the use of the corporation to form or perpetrate a fraud. Id. at 895. Nevertheless, parties seeking to pierce the corporate veil are not required to solely rely on these factors, as the corporate entity can be disregarded whenever it is necessary to avoid injustice. Fletcher-Harlee, 936 A.2d at 96. The Pennsylvania Superior Court in Fletcher-Harlee opined:

> The legal fiction that a corporation is a legal entity separate and distinct from its shareholders was designed to serve convenience and justice . . . and will be disregarded whenever justice or public policy require and where rights of innocent parties are not prejudiced nor the theory of the corporate entity rendered useless . . . we have said that whenever one in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interest, the fiction of a separate corporate entity might be properly disregarded.

Id. at 101.

In the instant case, Plaintiffs have stated that Mr. Provanzo held himself out as the developer of the "Reserve at Union School" as well as the builder of their home. Shortly after Plaintiffs complained to Mr. Provanzo regarding the sinkholes on their property, the "builder," Jay-Scot Builders, was no longer in business. See Def.'s Mot. to Dismiss, Ex. A. Plaintiffs also contend that corporate filings and internet advertising now show Heartland Builders as the builder of homes in "The Reserve at Union School" development. Mr. Provanzo is listed in those corporate filings and internet advertising as the President of Heartland Builders. Mr. Provanzo assured Plaintiffs that the sinkholes would be repaired and Mr. Provanzo told the Plaintiffs that the appearance of the sinkholes was an "act of God" and was not subject to the alleged written warranty that was made part of the sales agreement between Plaintiffs and the corporate Defendants.

Plaintiffs note that the rules do not impose a probability requirement at the pleading stage, but instead call for enough facts to raise a reasonable explanation that discovery will reveal evidence of the necessary elements of the cause of action. Plaintiffs submit that the issue that overrides this case concerns the intermingling of the actions of the corporations and Mr. Provanzo. Plaintiffs submit that in the facts raised to date, there are serious questions as to whether Plaintiffs were dealing with the actual corporate entity named or were dealing with Mr.

Provanzo. Consequently, there are questions as to whether Defendant Jay-Scot Builders was the real party in interest that entered into the sales agreement with Plaintiffs to purchase the property as described in the Second Amended Complaint. That, in turn, raises questions as to whether Plaintiffs are contractually obligated to mediate and/or arbitrate the issues raised in the Second Amended Complaint. Taking as true the allegations in the Second Amended Complaint that the two corporate Defendants are essentially sham corporations, equity is served by allowing the Plaintiffs to pursue the various causes of action alleged in the Second Amended Complaint. Plaintiffs believe, and this Court agrees, that they have raised sufficient factual allegations to show that their claim for relief against Mr. Provanzo is not speculative and that they may be entitled to "pierce the corporate veil" as to Mr. Provanzo at some point in this litigation. Accordingly, Mr. Provanzo's motion to dismiss must be denied.

      **B.**      **Motion to Dismiss Filed By Defendant FLM Development Co., Inc.**

Plaintiffs' specific contentions against FLM in the Second Amended Complaint are:

> 2. FLM Development Co., Inc. is a Pennsylvania corporation whose principal place of business is located at 3115 Nolt Road, Suite 700, Lancaster, PA 17601.
>
> 4. Frank J. Provanzo is president of Defendant FLM Development Co., Inc., Defendant Jay-Scot Builders, Inc. and Heartland Builders, Inc. Mr. Provanzo's principal place of business is located at 3115 Nolt Road, Suite 700, Lancaster, PA 17601.
>
> 6. The aforementioned property was located within a planned community development known as "The Reserve at Union School."
>
> 7. Defendant FLM Development Co., Inc. was the developer of "The Reserve at Union School."
>
> 11. On December 9, 2009, the Pennsylvania Department of State - Corporation

>Bureau recorded three "Statements of Change of Registered Office" filed by Defendant FLM Development Co., Inc., Defendant Jay-Scot Builders, Inc. and Heartland Builders, Inc.  Defendant Provanzo is listed as president of all three entities.
>
>12.  The "Settlement Statement" for the aforementioned Real Estate transaction, which was executed by Plaintiffs and Defendants' agent and dated 6-30-08, lists FLM Development Company, Inc. and Jay-Scott Builders, Inc. as the SELLERS of the aforementioned Real Estate.  (See Settlement Statement attached as Exhibit "B").

See Second Am. Compl., pp. 2, 3, 4.  Defendant FLM moves to dismiss the claims against it in the Second Amended Complaint on the basis that it was not a party to the Agreement of Sale or the Warranty and therefore cannot be liable to Plaintiffs in any way.  FLM notes that in the Agreement of Sale for the subject property, it was stricken from the identification of it as the Seller of the Property, i.e., the Seller is identified as "~~FLM Development Co., Inc.~~ and Jay-Scot Builders, Inc."  Second Am. Compl., Ex. A.

In the Settlement Statement, FLM is listed as a seller of the subject property.  See Second Am. Compl., Ex. B.  FLM  contends, without citation, that the Settlement Statement is not a binding contract between the parties and it does not impose any contractual obligations on FLM.  FLM also contends that its involvement in developing the planned community in which the subject property is located does not create a contractual obligation to the Plaintiffs.  Plaintiffs respond that, in Pennsylvania, a developer can be held liable for damages that a Plaintiff/home buyer may have as a result of construction and/or property defects involving a residential home, citing Amodeo v. Ryan Homes, Inc., 595 A.2d 1232 (Pa. Super. 1991).  In Amodeo, the Pennsylvania Superior Court affirmed the decision of the trial court holding the builder of a residential home and the developer of the housing community in which the home was built

jointly and severally liable for damages resulting from acid mine drainage that seeped into the basement of the home. Id. at 463. Pursuant to Amodeo, FLM's motion to dismiss on the basis that it was not a party to the Agreement of Sale or the Warranty Agreement will be denied.

> B. **Motion to Dismiss Filed By Defendants FLM Development Co., Inc. and Jay-Scot Builders.**

Defendants FLM and Jay-Scot Builders move for dismissal of the Second Amended Complaint based on the Warranty Agreement executed at settlement on June 30, 2008 which contains a binding arbitration provision. FLM and Jay-Scot Builders also contend that Plaintiffs' claim for breach of contract is premature because the parties agreed, pursuant to Paragraph 32 of the Agreement of Sale, to submit all claims arising from the Agreement of Sale to mediation in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute Resolution System. Because Plaintiffs did not comply with this provision, FLM and Jay-Scot Builders contend that Plaintiffs have failed to satisfy a condition precedent to judicial relief.

Plaintiffs respond that Jay-Scot Builders waived its right to arbitrate any claims under the Agreement of Sale. Plaintiffs cite paragraph 27 of the Second Amended Complaint wherein they averred:

> Plaintiffs, after notifying Defendant Provanzo of the presence of sinkholes on the property, were consistently told by Defendant Provanzo and an individual named "Chuck", that sinkholes were "Acts of God" and not subject to the provisions of the aforementioned warranty.

See Second Am. Compl., ¶ 27. Plaintiffs contend in their brief and reply to the motion to dismiss that none of the Defendants agreed to move forward with mediation and/or arbitration, however, now that Plaintiffs have initiated litigation, Jay-Scot Builders and FLM are claiming that the matter is subject to mediation and/or arbitration. According to Plaintiffs, the Defendants'

inconsistent language and behavior rise to the level of the Defendants voluntarily relinquishing any right they had to compel Plaintiffs to mediate and/or arbitrate Plaintiffs' grievances.

Under Pennsylvania law, "[i]t is well-settled that '[a]s a matter of public policy, our courts favor the settlement of disputes by arbitration.'" Stanley-Laman Grp., Ltd. v. Hyldahl, 939 A.2d 378, 382 (Pa. Super. 2007)(quoting Goral v. Fox Ridge, Inc., 683 A.2d 931, 933 (Pa. Super. 1996)). "'Nevertheless, the right to enforce an arbitration clause can be waived.'" Id.(quoting id.) Moreover, "'[w]aiver may be established by a party's express declaration or by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary.'" Id. (quoting Samuel J. Marranca Gen. Contracting Co., Inc. v. Amerimar Cherry Hill Assocs. Ltd. P'ship, 610 A.2d 499, 501 (Pa. Super. 1992)). "A party's acceptance of the regular channels of the judicial process can demonstrate its waiver of arbitration." Id. at 382-83 (citing Smay v. E.R. Stuebner, Inc., 864 A.2d 1266, 1278 (Pa. Super.2004)(stating acceptance of judicial process includes party's failure to raise arbitration issue promptly, party's engagement in discovery, and party waiting until it receives adverse rulings on pretrial motions before raising arbitration)); see also GE Lancaster Invs., LLC v. Am. Express Tax & Bus. Servs., Inc., 920 A.2d 850, 855 (Pa. Super. 2007). "'However, a waiver of a right to proceed to arbitration pursuant to the term of a contract providing for binding arbitration should not be lightly inferred and unless one's conduct has gained him an undue advantage or resulted in prejudice to another he should not be held to have relinquished the right.'" Id. at 383 (quoting Kwalick v. Bosacco, 329 Pa. Super. 235, 478 A.2d 50, 52 (1984)).

Among the factors to look at in determining whether a party has accepted the

judicial process are whether the party:

> (1) fail[ed] to raise the issue of arbitration promptly, (2) engage[d] in discovery, (3) file[d] pretrial motions which do not raise the issue of arbitration, (4) wait[ed] for adverse rulings on pretrial motions before asserting arbitration, or (5) wait[ed] until the case is ready for trial before asserting arbitration.

O'Donnell v. Hovnanian Enters., Inc., 29 A.3d 1183, 1187 (Pa. Super. 2011)(quoting St. Clair Area Sch. Dist. Bd. of Educ. v. E.I. Assocs., 733 A.2d 677, 682 n.6 (Pa. Cmwlth. 1999)(citing Goral)). According to the docket, Plaintiffs' initial Complaint was filed on December 14, 2010 and Defendants filed a motion to dismiss the Complaint on February 14, 2011, raising the issue of binding arbitration. Plaintiffs' Amended Complaint was filed on March 7, 2011, and Defendants' motion to dismiss the Amended Complaint was filed on March 14, 2011, again asserting, in part, that binding arbitration precludes the instant suit. On April 18, 2011, Judge Stengel granted Plaintiffs leave to file their Second Amended Complaint on or before April 26, 2011, which was filed on April 11, 2011. On May 2, 2011, FLM and Jay-Scot Builders filed a motion to dismiss Plaintiffs' Second Amended Complaint, again raising the binding arbitration clause in the Warranty Agreement. The Defendants promptly raised the issue of arbitration and did not accept the judicial process. At this point in the pleading stage of the case, Plaintiffs do not provide evidence sufficient to show waiver of the binding arbitration clause in the Warranty Agreement. As such, the motion to dismiss is granted as to Jay-Scot Builders, and Plaintiffs shall proceed to arbitration against Defendant Jay-Scot Builders, the only party besides Plaintiffs which was a signatory to the Agreement of Sale and the Warranty Agreement.[3]

FLM and Jay-Scot Builders also move for dismissal of Plaintiffs' claims for

---

[3] At this stage, it does not appear on the face of the pertinent documents that FLM or Mr. Provanzo are parties bound to the Agreement of Sale or the Warranty Agreement, including the mandatory arbitration clause.

negligence, negligent misrepresentation and intentional misrepresentation in the Second Amended Complaint on the basis that the gist of the action is contract, and not tort, and Plaintiffs' negligence, negligent misrepresentation and intentional misrepresentation claims are nothing more than a duplication of Plaintiffs' claim for breach of contract.

Plaintiffs' entire response to this argument is the following:

> In the third question raised by Defendants, it is asserted that the causes of action should be dismissed pursuant to the "gist of the action" doctrine, which forecloses any tort claims. Plaintiffs' response is simple, since Defendants are asserting that Defendant FLM Development Co., Inc. was not a party to the contractual agreement between Plaintiffs and Defendant, then the "gist of the action" doctrine is not applicable to Defendant FLM Development Co., Inc. Plaintiffs also assert that Defendant Provanzo again, could not utilize this doctrine to preclude Plaintiffs' tort claims against him. Again, Plaintiffs also raise the piercing of the corporate veil issue, as it pertains to Defendant Jay-Scot Builders, asserting that Defendant Jay-Scot was not a real party of interest to the aforementioned sales agreement.

Pls.' Br. & Reply, p. 6. Based on our review of the Second Amended Complaint, we conclude that the allegations as to the negligent misrepresentation and intentional misrepresentation claims are insufficient to meet the particularity requirement of Rule 9(b). Specifically, we note that although Plaintiffs claim that Defendants made various misrepresentations to them, they do not specify the time, place, speaker, and content of the alleged misrepresentations. See Saporito v. Combustion Eng'g Inc., 843 F.2d 666, 675 n.15 (3d Cir. 1988), vacated on other grounds, 489 U.S. 1049 (1989)(citing Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)(noting that Rule 9(b) requires that the pleader "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.")) Accordingly, we grant Defendants' motion to dismiss Counts II and III of Plaintiffs' Second Amended Complaint. At this time, we reserve comment on the gist of the

action doctrine as it pertains to Counts I, II and III because, as more fully explained below, we will allow Plaintiffs an opportunity to amend their negligent misrepresentation and intentional misrepresentation claims.

We recognize that Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend a pleading "once as a matter of course at any time before a responsive pleading is served." Fed.R.Civ.P. 15(a). A motion to dismiss is not a responsive pleading and does not extinguish the right to amend an initial pleading. Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000); Kronfeld v. First Jersey Nat'l Bank, 638 F. Supp. 1454, 1460 (D. N.J. 1986). Therefore, when a defendant asserts the defense of failure to state a claim by motion, plaintiffs may amend the complaint once "as a matter of course" without leave of court. Shane, 213 F.3d at 115. Defendants have filed only motions to dismiss. Because Defendants have not yet filed an answer to Plaintiffs' Second Amended Complaint, Plaintiffs may, as a matter of right, amend their negligent misrepresentation and intentional misrepresentation claims against Defendants. See Fed.R.Civ.P. 15(a). Accordingly, we will allow Plaintiffs to file a Third Amended Complaint for the purpose of amending their negligent misrepresentation and intentional misrepresentation claims as to Defendants.

The United States Supreme Court has enumerated the circumstances under which leave to amend may be denied:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.'

Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In this case, it does not

17

appear that allowing Plaintiffs to amend their negligent misrepresentation and intentional misrepresentation claims against Defendants would cause undue delay. This litigation is in its earliest stages and very little, if any, discovery or pre-trial preparation has taken place. Accordingly, because leave to amend should be freely given, we will allow Plaintiffs to file a Third Amended Complaint with respect to the negligent misrepresentation and intentional misrepresentation claims against Defendants. Plaintiffs shall file their Third Amended Complaint by April 30, 2012.

Finally, FLM and Jay-Scot Builders move for dismissal of Plaintiffs' claim for breach of the implied warranty of habitability in Count V of the Second Amended Complaint on the basis that the warranty agreement executed by the parties specifically disclaimed all implied warranties, including the implied warranty of habitability. The "One-Year Limited Warranty Agreement" which was executed by the Plaintiffs and Mr. Provanzo on behalf of Jay Scot Builders on June 30, 2008, the date of settlement, contained the following provision:

> 11. Builder and Owner agree that this warranty on the Home is in lieu of all WARRANTIES OF HABITABILITY OR WORKMANLIKE CONSTRUCTION or any other warranties, express or implied.

Provanzo Affid., Ex. B (emphasis added). Plaintiffs respond by arguing:

> Plaintiffs again submit that pursuant to Defendants' protestations, Defendants FLM and Defendant Provanzo are allegedly not parties to the sale agreement between Plaintiffs and Defendant Jay-Scot. Consequently, any alleged disclaimer cannot be applicable to those parties. Also, piercing the corporate veil may reveal that the disclaimer may not be effective as to the defense of Defendant Jay-Scot. Finally, as Plaintiffs have argued previously, supra, Defendants waived their right to disclaim the implied warranty of habitability when they continuously contended that the matter of the sinkholes on the property was not a subject to be brought forward in the mediation and/or arbitration clauses of the residential sales agreement. In a nutshell, Defendants cannot have their cake (denying the sinkhole agreement comes under the residential sales agreement) and eat it, too (now

averring that the sinkhole problem is subject to provisions of the residential sales agreement).

Pls.' Br. & Reply, p. 7.

The Pennsylvania Superior Court examined implied warranty law in Pennsylvania in Pontiere v. James Dinert, Inc., 627 A.2d 1204, 1206 (Pa. Super.1993) and stated the following:

> Pennsylvania law recognizes an implied warranty of habitability in contracts where builders-vendors sell new homes to residential purchasers. Elderkin v. Gaster, 447 Pa. 118, 288 A.2d 771 (1972)). The implied warranty requires that a builder, typically more skilled and experienced in the construction field than the purchaser, "bear the risk that a home he built will be functional and habitable in accordance with contemporary and community standards." Id. at 128, 288 A.2d at 777. Although the implied warranty may be waived by clear and unambiguous contract language, such language must be sufficiently particular to inform the home purchaser of the right he or she is waiving. Tyus v. Resta, 328 Pa. Super. 11, 476 A.2d 427 (1984). Furthermore, the contract must always be construed against the builder and in order to exclude warranty coverage for latent defects, "language of disclaimer must refer to its effect on specifically designated, potential latent defects." Id. at 20, 476 A.2d at 432.

Id. at 1204, 1206. In the instant case, it is debatable whether the sinkholes which developed on the property were potentially latent defects. As such, pursuant to Pontiere, this Court must deny the motion to dismiss based on the disclaimer of implied warranties.

An appropriate order follows.